UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANDREW MOORE<br><br>Plaintiff,<br><br>v.<br><br>LEAR CORPORATION<br><br>Defendant. | CAUSE NO.: 1:22-CV-108 HAB |

**OPINION AND ORDER**

Plaintiff Andrew Moore ("Moore") was disciplined by his employer, Lear Corporation ("Lear") for some issues he had while operating a forklift on the job.  After Moore, who is black and has been employed by Lear since 2014, was involved in a minor forklift collision, Lear suspended him without pay. After a second incident a month later, Lear removed Moore from his job as a forklift driver and placed him in the position of an assembly worker. These actions, according to him, did not occur when white employees made similar mistakes. Moore also contends that Lear suspended him for refusing to transfer jobs but white employees were not suspended when they refused transfer. Moore filed a Charge of Discrimination and claims after he did so, he was subjected to additional scrutiny and supervision while working. He filed suit against Lear claiming violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

Lear moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6)[1] because Moore, as a union employee subject to a collective bargaining agreement (CBA), did not avail himself of the grievance procedures set forth in the CBA. (ECF No. 10). Lear also asserts that Moore's claims

---

[1] As noted later in the Opinion, a Motion to Dismiss under 12(b)(6) is not the proper procedural vehicle for asserting affirmative defenses as Lear has done here.

are preempted under §301 of the Labor Management Relations Act (LMRA) and barred by the statute of limitations for §301 claims. *Id.* Because the Court finds that Moore's claim does not fall under §301 of the LMRA and there is no "clear and unmistakable" language in the CBA requiring that Moore's statutory discrimination complaints be presented through the grievance procedure, the motion to dismiss will be DENIED.

## DISCUSSION

### a. Procedural Standard

Defendant styled its motion as one under Federal Rule of Civil Procedure 12(b)(6). Although a proper 12(b)(6) motion depends solely on the allegations of the Complaint, Defendant asserts in its motion facts that are not in the Complaint: that Plaintiff is a bargaining unit member subject to the CBA negotiated between the union and Lear. The CBA is not attached to the Complaint and therefore, not made part of the complaint. This is because Plaintiff says he is not bringing a claim under the CBA, as Lear seems to assert; indeed, there is no mention of the CBA anywhere in the Complaint. Rather, the Complaint on its face is a straightforward discrimination action under federal statutes.

Lear, however, believing that the Complaint implicates the disciplinary provisions in the CBA, attached a copy of the CBA to its motion to dismiss. Lear asserts that the discrimination claims pled in the Complaint are subject to the grievance procedure bargained for in the CBA and thus it is proper to consider the CBA on a motion to dismiss. *See Minch v. City of Chicago*, 486 F.3d 294, 300 n. 3 (7th Cir. 2007) ("[W]hen a complaint refers to and rests on a contract or other document that is not attached to the complaint, a court might be within its rights to consider that document in ruling on a Rule 12(b)(6) motion to dismiss the complaint without converting the motion into one for summary judgment, so long as the authenticity of the document is

unquestioned."). Plaintiff did not object to the inclusion of the CBA for the Court's consideration, nor does he contest the CBA's authenticity; instead, he contends that attaching the CBA converts the motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d). Both parties are incorrect.

Lear's motion hinges on various assertions. It asserts, for instance, that the broad language in the CBA requires employees to raise any discrimination claims through the negotiated grievance process. Expressed in slightly different terms, Lear argues that even though Moore could have raised his race discrimination and retaliation complaints through the grievance process, he did not and instead bypassed the CBA procedure to assert his claim in court. But "a failure to exhaust is normally considered to be an affirmative defense." *Mosely v. Bd. of Educ. of City of Chi.,* 434 F.3d 527, 533 (7th Cir. 2006). So too, Lear's arguments that Moore's Title VII claims are preempted by §301 of the LMRA and are outside the statute of limitations for such claims are also affirmative defenses. *See Leavell v. Kieffer,* 189 F.3d 492, 494 (7th Cir. 1999) (the statute of limitations is an affirmative defense); *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 547 (7th Cir. 2012) (preemption is an affirmative defense). And affirmative defenses need not be anticipated or negated in a complaint. Thus, a motion to dismiss is usually only granted if a plaintiff pleads facts that show his claim is barred by the affirmative defense. *See, e.g., Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718-19 (7th Cir. 1993) ("A complaint that on its face reveals that the plaintiff's claim is barred by a statute of limitations ... can be dismissed on a motion to dismiss.").

Rule 8(c) states: "In response to a pleading, a party must affirmatively state any avoidance or affirmative defense…" Fed. R. Civ. P. 8(c). Thus, as the rule suggests, the proper way to seek a dismissal based on an affirmative defense is not by a motion to dismiss under Rule 12(b)(6), "[r]ather, the defendant should answer and then move under Rule 12(c) for judgment on the

3

pleadings." *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). Indeed, "[f]ailure to follow this process may 'deprive[ ] the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms.'" *Id. (quoting Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997); see also *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 350 (1971) (purpose of Rule 8(c) is to give opposing party notice of affirmative defense and opportunity to contest it).

As noted above, a narrow exception exists if the affirmative defenses are apparent in the complaint itself. Here, they are not. A cursory review of the Complaint shows that Moore's Complaint relies solely on Title VII and 42 U.S.C. §1981. The union is not a party. The Complaint neither mentions the CBA between the parties or any other labor relations act, such as the LMRA, and therefore the defenses depend on evidence outside the Complaint – the CBA – which is not proper for the Court to consider on a Rule 12(b)(6) motion. While the Court could soundly deny the motion to dismiss on this basis alone, that would only prolong the substantive discussion to come and do nothing to advance the ball for judicial economy purposes. The parties have provided the CBA and briefed the relevant issues. So despite the procedural morass Lear created by proceeding as it has, the Court will use its discretionary authority to decide the matter as if it had been presented under Fed. R. Civ. P. 12(c). *Wardingley v. Ecovyst Catalyst Techs., LLC*, 2022 WL 16714139, at *2 (N.D. Ind. Nov. 4, 2022) (finding the procedural defect to be of no consequence because the Court had all it needed to rule on the defense); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (finding that although the district court judge "jumped the gun" by dismissing the case

4

under Rule 12(b)(6), the error was harmless since the court had all it needed to rule and the plaintiff did not object).[2]

Whether or not the Court considers the motion a rule 12(b)(6) or a rule 12(c) motion it is evaluated using the same legal standard. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995) (Rule 12(c) uses the same standard as a motion to dismiss under Rule 12(b)(6)). Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craig's, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)).

### b. Factual Background

Moore, an African American male, was employed as a Forklift Driver at Lear's Columbia City, Indiana plant. The precipitating events for this suit occurred in May and June 2021 when Moore was involved in a minor collision while driving a forklift. Moore was suspended without pay for that incident. In June 2021, Moore dropped a foam item from a forklift. After this incident, Moore was removed from his position as a forklift driver and placed in a less desirable position as an assembly worker. Based on these actions taken by Lear, Moore filed a Charge of Discrimination with the EEOC against it. Moore asserted that other non-black employees committed similar violations while driving a forklift and were not suspended without pay and were not transferred to less desirable positions. After receiving a Notice of Right to Sue letter, Moore did just that, suing Lear in state court, later removed by Lear to this Court, asserting that the actions taken against him

---

[2] While the Seventh Circuit strongly warns district courts to avoid *granting* 12(b)(6) motions based on affirmative defenses, *Brownmark Films, LLC, v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), here, the Court ultimately finds dismissal inappropriate. So the procedural quandary Lear created does not put the Court in a position to run afoul this Seventh Circuit authority.

5

constituted race discrimination under Title VII and §1981. Moore also asserts that after he filed his EEOC Charge, he has been "subjected to over-scrutiny of his work and Defendant nitpicked his every action" as retaliation for complaining of unlawful discrimination.

During the relevant period, workers at Lear's Columbia City plant were represented by the United Auto Workers Union (the Union), as their exclusive bargaining agent. Their employment was governed by a CBA between Lear and the Union in effect through February 1, 2025. (CBA, ECF No. 11-1). In general terms, the CBA establishes the terms of employment for represented employees of Lear at its Columbia City plant and provides for prompt disposition of differences arising between Lear and the represented parties.

Relevant here, Article 2, §2 of the CBA contains a broad non-discrimination provision:

> It is the policy of the Company and the Union that they will not discriminate against anyone because of race, color, creed, sex, sexual orientation, age, national origin, religious or political affiliation, disability, status as a veteran of the Vietnam era, or other protected characteristic as established by law.
>
> [Lear] will not interfere with, restrain, or coerce employees because of membership or lawful activity in the Union, nor will it, by discrimination in respect to hire, tenure or employment or any term or condition of employment, attempt to discourage membership in the Union.

(CBA, Article 2, §2, at 6).

Article 5 of the CBA sets out the five-step grievance procedure which applies to a "claimed violation of some right established by this agreement including any complaint but not limited to any shop rules, policy or procedures invoked by the company that affects any conditions of employment." (CBA, Article 5, §1 at 11). Section 2 of that Article clarifies:

> Unless otherwise expressly provided in this Agreement, any and all disputes including interpretations of contract provisions arising under, out of, in connection with, or in relation to this Collective Bargaining Agreement, shall be subject to this grievance procedure.

(*Id.* Article 5, §2 at 11). Although it is comprehensive, the particulars of the five steps are not relevant since it is undisputed that Moore did not invoke them here. What is relevant is that the Union retains the right at Step 5 to appeal the Company's Step Five determination to arbitration.

Aside from these CBA provisions, the Union and Lear entered into a number of Unpublished Letters of Understanding, including one headed "***Harassment in the Workplace***" that provides:

> The Union and the Company are committed to the success of the facility and a workplace free from harassment and discrimination in accordance with the Company's Harassment-Free Workplace policy and its Equal Employment Opportunity policy. All employees are expected to treat all persons with courtesy and consideration and must not engage in any form of harassment or discrimination in violation of either policy.
>
> Employees should bring any complaint of unlawful harassment or discrimination to the attention of the Company in the way provided in the Harassment-Free Workplace policy or the Equal Employment Opportunity policy. The Company will promptly investigate such complaints and take prompt remedial action [] as warranted under the circumstances. Employees must cooperate with such investigations. Employees may elect to have a Union representative present when bringing their complaints to the Company.

(CBA, at 57). Lear asserts that this unpublished letter combined with the language in the CBA required Moore to bring his discrimination claims though the grievance process, including the arbitration provision.

   c.   **Analysis**

Lear argues that the Court should dismiss the complaint because Plaintiff's Title VII claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), is filed outside the 6-month statute of limitations for such claims, and because Moore failed to allege exhaustion of his CBA remedies. The Court addresses each of these arguments below.

   1.   **Preemption and Statute of Limitations under §301 of the LMRA**

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Claims governed by § 301 "must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quotation marks and citation omitted). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quotation marks and citation omitted). Yet "[n]ot every suit concerning employment or tangentially involving a CBA, ... is preempted by [§] 301." *Vera*, 335 F.3d at 114; *see Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 421 (S.D.N.Y. 2013). "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester,* 273 F.3d 153, 158 (2d Cir. 2001) (per curiam). Courts consider whether the "legal character" of the claim is "truly independent of rights under the CBA" and whether the claim is "substantially dependent on analysis of a CBA." *Kaye*, 975 F. Supp. 2d at 421 (cleaned up).

Lear argues that Moore's Title VII and section 1981 claims are preempted by the LMRA because the claims require interpretation of the CBA. Lear contends that because Moore is complaining about the discipline he received after he was involved in a collision and he dropped materials from a forklift, the CBA's provisions relating to when discipline is appropriate is implicated. Moore disagrees arguing that his Complaint does not assert any contractual right to be free of discipline under the CBA. Rather, he is asserting that the discipline imposed violated Title VII and §1981 because it was not equally doled out to white and black employees alike.

Our sister court in Wisconsin addressed a nearly identical issue in *Murphy v. United Parcel Serv., Inc.,* 528 F. Supp. 3d 983 (E.D. Wis. 2021). In that case, the Plaintiff, like Moore here, did not mention the LMRA or the CBA in his complaint nor did he sue the union, but he argued that his rights had been violated under Title 1 of the American with Disabilities Act (ADA) because UPS failed to accommodate his disability on the job. Like Lear here, UPS argued that the complaint's allegations implicated the CBA which subject it to the LMRA. The court, citing to *Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 191 (6th Cir. 2012), where the panel refused to apply preemption to a plaintiff's ADA claim, rejected this argument noting that §301 of the LMRA only authorizes suits between employees against employers and labor unions for violating the CBA. *Murphy*, 523 F. Supp. 3d at 992. And while an action can "unavoidably implicate" the union even without plaintiff naming the union in the suit, the Court noted that the preemption doctrine only applies to state law claims. *Id.* at 994. Since the plaintiff sought vindication of a federal right conferred by a separate, statutorily created cause of action independent of a CBA-based cause of action, the Court, relying on *Watts* as persuasive authority, found preemption did not apply:

> While it is not binding, the court finds the *Watts* decision persuasive against the backdrop of Seventh Circuit jurisprudence…and the defendant's rationales for why the court should ignore it stretch Seventh Circuit precedent beyond its tolerance.… The defendant has not identified any provision of the CBA that would need to be reinterpreted, or applied differently to other, similarly situated employees, if the court were to rule on the plaintiff's ADA claim.
>
> The first amended complaint alleges that the defendant repeatedly failed to provide interpreters for meetings and other employment functions when requested and refused to provide notes on meetings without interpreters in violation of the ADA. The court does not need to interpret the CBAs to decide whether the defendant has violated federal law…. While the court may consult the CBAs or his prior grievances in resolving this case, a decision on the plaintiff's claims does not require interpretation of the CBAs.

*Murphy*, 528 F. Supp. 3d at 999.

Applying the above precedent here, the Court agrees with Moore that preemption does not apply. The right to be free of race discrimination is an independent statutory right under Title VII and §1981. This right is what Moore seeks to enforce; not any contractual right under the CBA. Indeed, it is clear from the Complaint's failure to mention the CBA that Moore is not asserting that the discipline shouldn't have been imposed under the CBA. Rather, he is seeking vindication of his statutory right to have that discipline imposed free of race discrimination. Accordingly, the Court finds that Moore's claim does not require interpretation of the disciplinary provisions of the CBA outside of a mere referral that the disciplinary provisions exist. Moore's claims are not preempted under the LMRA.

Given this determination, the Court can also disregard Lear's assertion that the 6-month statute of limitations under the LMRA applies to bar Moore's claims.

2. **Exhaustion**

Next Lear argues that Moore was required to run his discrimination claims through the grievance procedure, including the arbitration requirement contained in the CBA. Failure to do so, it contends, requires dismissal of his Complaint.

An agreement to submit statutory claims to a grievance process is enforceable "so long as the collective bargaining agreement explicitly states that an employee must resolve his statutory as well as his contractual rights through the grievance procedure delineated in the collective bargaining agreement"; "[t]he language of the agreement in this regard must be clear and unmistakable." *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017) (discussing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), and other cases). Where "nothing in the language of the collective bargaining agreement clearly and unmistakably requires an

employee to resolve a statutory claim through the grievance procedure," an employee may bring statutory claims in federal court without filing a grievance first. *Vega*, 856 F.3d at 1135.

The Supreme Court as well as lower courts scouring CBA provisions for "clear and unmistakable" language have determined that the standard is an exacting one. Such a standard "ensures that [the] employees' right to bring statutory claims in court is not waived by operation of confusing, 'very general' arbitration clauses." *Abdullayeva v. Attending Homecare Servs. LLC,* 928 F.3d 218, 223 (2d Cir. 2019); compare, *Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 80 (1998) (finding mandatory arbitration clause for "matters under dispute" did not waive right to bring claims of employment discrimination in court, because such an ambiguous clause "could be understood to mean matters in dispute under the contract") with *14 Penn Plaza*, 556 U.S. at 260, (holding that a collective bargaining agreement that "clearly and unmistakably requires union members to arbitrate [Age Discrimination in Employment Act] claims is enforceable as a matter of federal law"). These cases explain that the standard "require[s] specific references in the CBA either to the statutes in question or to statutory causes of action generally." *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016).

In *14 Penn Plaza*, for instance, the Supreme Court upheld a CBA containing an explicit provision requiring claims under the Americans with Disabilities Act to be grieved and arbitrated. The language there read:

> "There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, ... or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations.

11

> Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination."

*14 Penn Plaza,* 556 U.S. at 258-59. *Id.* The Court concluded that this language "[met] [the] obligation" that "an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." The Court explained that the parties fashioned the agreement to explicitly provide that "employment-related discrimination claims ... would be resolved in arbitration." *See id.* at 256. Thus, the agreement "clearly and unmistakably require[d] respondents to arbitrate the age-discrimination claims at issue." *Id.* at 260.

In *Wright,* the Supreme Court determined that the waiver of a federal forum for discrimination claims in a collective bargaining agreement was not clear and unmistakable and therefore the plaintiff could proceed to litigate his ADA claims in court despite the CBA's broad arbitration clause. The employer in *Wright* relied on several provisions in the agreement. One section provided for arbitration for "[m]atters under dispute," and another stated that the "Agreement is intended to cover all matters affecting wages, hours and other terms of employment." A third section provided that "[i]t is the intention and purpose of all parties hereto that no provision or part of this agreement shall be violative of any Federal or State law." 525 U.S. at 80–81. The Court found that the general CBA provisions relied upon by the employer could not meet the clear and unmistakable standard because they were susceptible to interpretation.

Taking the nod from the Supreme Court's discussions in *14 Penn Plaza* and *Wright*, the Seventh Circuit decided *Vega* and *Cloutier v. GoJet Airlines, LLC,* 996 F.3d 426 (7th Cir. 2021). In *Vega*, the Seventh Circuit held that a collective bargaining agreement "set[ting] forth a mandatory four-step procedure culminating in arbitration to resolve employee grievances" did not "clearly and unmistakably waive [the] right to pursue [a] [Fair Labor Standards Act (FLSA)] claim in a judicial forum." *Vega*, 856 F.3d at 1131 (footnote omitted). Defendant there argued that the

12

CBA defined a grievance to include disputes over pay and thus it required statutory claims related to pay to be submitted through the grievance process. The panel rejected this argument holding that the collective bargaining agreement language fell more on the side of *Wright* than *14 Penn Plaza*. That language, the panel concluded did not prohibit the plaintiff from litigating his FLSA claims because that was "the most natural reading of the agreement," which nowhere referenced the FLSA. *Id.* at 1135.

Finally, in *GoJet*, the defendant, like Lear here, asked the Seventh Circuit to read multiple sections of the CBA together to require mandatory arbitration of plaintiff's FMLA claims. In that case, Section 24 provided that "[a] grievance is a dispute between the parties arising under the terms of this Agreement." Section 15 earlier provided: "Family and Medical Leave (FMLA)[:] The Company shall grant family and medical leaves in accordance with applicable law." *GoJet,* 996 F.3d at 435-437. GoJet argued that read together, these sections required any FMLA claims to be arbitrated. The Seventh Circuit disagreed, finding that the CBA's language more closely resembled the contractual language in *Wright* and *Vega* than the language in *14 Penn Plaza*. *Id.* Much like the language in *Wright*, which was "very general, providing for arbitration of '[m]atters under dispute,'" *id.* at 80, the CBA only provided for arbitration of "dispute[s] between the parties arising under the terms of this Agreement." The Seventh Circuit concluded that reading Section 24 to have not precluded litigation of FMLA claims is "the most natural reading of the agreement," given the lack of any reference to the FMLA in Section 24. *GoJet,* 996 F.3d at 437 (referencing *Vega*, 856 F.3d at 1135).

Turning to the CBA here, the language Lear relies on does not meet the clear and unmistakable standard as the authorities cited above contemplate it. Lear asserts that the Court should read together the non-discrimination language in Article 2 §2 with the grievance procedure

set out later in Article 5 to find the clear and unmistakable language it needs to prevail on its motion. But what the courts have determined is that clear and unmistakable language means just that – the language in the agreement expressly, without resort to inference or interpretation, requires that statutory claims be brought through the grievance process. This is what the Supreme Court acknowledged existed in *14 Penn Plaza* and found lacking in *Wright*. The cases upholding the CBA language as clear and unmistakable are cases in which there is an express reference to the statutory claims and a requirement that such claims be submitted to the grievance process.

Here, however, the Court finds it difficult to square Lear's concept of clear and unmistakable to language in the CBA that is anything but those things. The language at issue requires "any and all disputes including interpretations of contract provisions arising under, out of, in connection with, or in relation to this Collective Bargaining Agreement, shall be subject to this grievance procedure." (Article 5, §2). Nothing about this language expressly refers to statutory claims; it focuses solely on contractual claims. And there is no language Lear points to, even in the other sections of the CBA that it relies on, that specifically waives an employee's right to a judicial forum for Title VII claims. Accordingly, the Court finds no requirement that Moore submit his statutory claims to the grievance process.

### 3. Failure to State a Claim

Finally, Lear asserts that the Complaint as pled fails to disclose facts showing all the elements of a race discrimination claim. But the pleading requirement for discrimination claims "is minimal." *Clark v. Law Off. of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017). Typically, "[a] plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Id.*; see also *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Lear contends that none of the actions

14

taken against Moore constitute adverse actions under the case law. At this stage of the proceeding however, Lear's arguments are premature. Plaintiff has, in fact, pled that adverse actions were taken against him. He alleges he was disciplined, his job duties changed after the forklift incidents, and he faced increased scrutiny and supervision after complaining about discrimination. Whether these actions were severe enough under case authorities to rise to the level of a materially adverse action must be determined after discovery and an opportunity for the parties to flesh out what, in fact, these actions meant for the terms of Moore's employment. Moore does not have to prove these allegations in his Complaint. All he must do is make allegations that might assert a cause of action and entitle him to relief. *Brown v. Budz,* 398 F.3d 904, 914 (7th Cir. 2005) ("[T]he plaintiff does not have to "show" anything; he need only allege."). He has done so.

## CONCLUSION

Based on the above reasoning, the Defendant's Motion to Dismiss (ECF No. 10) is DENIED.

SO ORDERED on March 27, 2023.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT